United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Cajule Cedant, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-24877-Civ-Scola |
| United States of America, | ) |
| Defendant. | ) |

## Order On Motion for Summary Judgment

This matter is before the Court upon the Defendant's second motion for summary judgment. For the reasons stated below, the Court **grants** the Defendant's motion (**ECF No. 60**).

### 1. Background

The instant dispute arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.* On December 10, 2017, the Plaintiff claims to have been involved in a traffic accident with United States Postal Service ("USPS") employee Elijah Miller in North Miami, Florida when Mr. Miller allegedly ran a stop sign while in his USPS Long-Life Vehicle ("LLV") and collided with the Plaintiff's vehicle, resulting in the Plaintiff's vehicle rolling over. (ECF No. 51, at 1.) As a result, the Plaintiff claims he was "injured in and about his body, including his neck and back and/or aggravated a pre-existing condition of injury" including "permanent injuries within a reasonable degree of medical probability." (ECF No. 1, at ¶ 12; ECF No. 61, at ¶ 3.) The Plaintiff also complains of injuries to his right shoulder and his left knee. (ECF Nos. 59, 61 at ¶ 4.) While that is the backdrop of the instant dispute, it is not the focus of the Defendant's second motion for summary judgment. Instead, the Defendant argues that this summary judgment is appropriate because deficiencies with the Plaintiff's expert reports mean the Plaintiff will be unable to prove his case at trial.

It is important to recount the procedural history of this matter. On May 26, 2020, the Court issued its scheduling order, which required the parties to exchange expert witness disclosures by December 29, 2020. (ECF No. 51, at 1.) Fact discovery closed on that same date. (*Id.*) On January 5, 2021, after the deadline for expert witness disclosures had passed, the Plaintiff moved the Court to extend all pre-trial deadlines, including trial date. (*Id.*) In his motion, the Plaintiff stated he needed to extend "the deadline to exchange expert witness summaries/reports as the prior deadline fell during the holidays." (*Id.*)

The Defendant timely disclosed its reports. (*Id.*) The Court denied the Plaintiff's motion because the Plaintiff failed to explain why it could not abide by future deadlines in the case and explained an order from the Court is not necessary when an extension does not interfere with future Court-imposed deadlines. (*Id.* at 2.) On January 8, 2021, the Plaintiff moved the Court to reconsider its motion, now explaining that the Plaintiff needed an extension due to the approaching dispositive motion deadline of January 12, 2021. (*Id.*) The Court granted the Plaintiff limited relief and extended the dispositive motion deadline by 10 days, but stated "all other deadlines shall remain the same." (*Id.*) The Plaintiff provided untimely expert reports to the Defendant on January 11, 2021. (ECF No. 59, 61 at ¶ 7.)

In its first motion for summary judgment, the Defendant argued that summary judgment was proper because the Plaintiff should not be able to rely on its untimely and allegedly deficient expert reports and therefore cannot prove causation or actual harm. (ECF No. 51, at 4.) While the Court acknowledged the potential merit in these arguments, the Court noted the preference in the Eleventh Circuit is that matters be resolved on their merits, rather than based on procedural technicalities. (*Id.*) Despite the Court's finding that the Plaintiff had failed to satisfy its burden to show why extensions of time were warranted, the Court nonetheless denied the Defendant's initial summary judgment motion to provide the Plaintiff with an opportunity to timely disclose his expert reports and address any alleged deficiencies, given "the potentially dispositive nature" of the Plaintiff's expert materials. (*Id.* ("the Court finds the government's arguments persuasive.").) Thereafter, the Court entered its first amended scheduling order (ECF No. 54), extending all remaining pre-trial deadlines, and trial date, including the "[d]eadline to exchange expert witness summaries/reports pursuant to Federal Rule of Civil Procedure 26(a)(2)." Both in its initial scheduling order, and in its first amended scheduling order, the Court noted that "[w]hen a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report" but when such treating physician offers opinions "beyond those arising from treatment . . . full Rule 26(a)(2)(B) reports are required." (ECF No. 54, at 2.) During the pendency of its first motion for summary judgment, the Defendant also filed a motion in limine, or in the alternative, a *Daubert* motion, to exclude the Plaintiff's treating physician or expert testimony, citing certain deficiencies with the Plaintiff's disclosures. (ECF No. 59, 61 at ¶ 10.) The Court denied that motion as prematurely filed in light of its amended scheduling order. (ECF No. 56.)

In its second motion for summary judgment, the United States contends that, once again, summary judgment is warranted because the Plaintiff has

failed to disclose adequate, though now timely, expert reports and therefore cannot prove causation or actual harm at trial. The Defendant states that notwithstanding the Court's prior decision to extend deadlines, the "Plaintiff has still failed to comply with Federal Rules of Civil Procedure 26(a)(2)(B) and (C)." (ECF No. 60, at 1.) The Defendant states that rather than submit corrected expert reports, the Plaintiff "once again submitted wholly inadequate expert reports that do not comply with the requirements of Rule 26(a)(2)(B)" and therefore "summary judgment should be granted for Defendant because there is no dispute that Plaintiff is unable to establish actual harm and causation." (*Id.* at 1-2.) The Defendant urges the Court to strike the Plaintiff's expert reports pursuant to Federal Rule of Civil Procedure 37 and dispose of the Plaintiff's claims as the Plaintiff would thereafter be unable to establish actual harm or causation.

The Plaintiff does not dispute that its initial expert reports were untimely when they were initially submitted (ECF No. 59, 61 at ¶ 7) or that on April 22, 2021,the Plaintiff provided Rule 26(a)(2)(B) reports to the Defendant for Dr. Shani Katz and Dr. Heldo Gomez, Jr. that were identical to those the Plaintiff provided to the Defendant in January. (*Id.* at ¶ 17, 18, 22.) The Plaintiff does however take issue with the Defendant's characterizing Dr. Katz and Dr. Gomez as "proposed expert witnesses" because the Plaintiff considers these witnesses as "non-retained treating physicians." (*Id.* at ¶ 17.) The Defendant argues that Dr. Gomez's and Dr. Katz's reports did not contain a complete statement of all opinions the witnesses would express, did not disclose the basis for the witnesses' opinions, did not contain the facts or data the witnesses considered in forming those opinions, and did not include testimony lists for the witnesses. (*Id.* ¶¶ at 19-21; 23-27.) The Plaintiff disputes the Defendant's characterization of the Dr. Katz's and Dr. Gomez's reports, noting the reports contained the opinions of the doctors as "non-retained treating physicians," contained the basis for the opinions expressed, contained the facts and data considered, and states that neither doctor maintained a testimony list such that the Plaintiff had no duty to disclose a testimony list to the Defendant. (*Id.*) The Parties agree that Dr. Katz and Dr. Gomez intend to offer testimony, among other things, on the "worsening, accelerated degeneration, . . . permanency of the injuries, prognosis, future medical treatment, causation, and future medical costs" suffered by the Plaintiff. (*Id.* at ¶¶ 28-29.)

On April 22, 2021, the Plaintiff also filed a Rule 26(a)(2)(C) disclosure, listing nine proposed witnesses, including Dr. Katz and Dr. Gomez, who the Plaintiff characterize as "non-retained treating physicians." (*Id.* at ¶ 30.) The Plaintiff and Defendant agree that Drs. Geoffrey Tashjian, Michael Thorpe, and Heather Kahan will not testify about "worsening, accelerated degeneration and

permanence of the injuries, tests, medications, surgery, and the costs associated with such; prognosis, future medical treatment, causation, and future medical costs; and any past, present, and/or future medical treatment." (*Id.* at ¶ 32.) Dr. Steven Berman, Dr. George Rovito, and Dr. Jane Bistline are expected to testify on these topics, though no Rule 26(a)(2)(B) disclosure or other items required by Rule 26(a)(2)(B) were provided for these witnesses. (*Id.* at ¶ 33-41.) The Defendant notes that these witnesses were not retained as Rule 26(a)(2)(B) experts, so no disclosures were made pursuant to that rule. Finally, Tanya Henderson is expected to testify as to "her interaction with the Plaintiff and the costs associated with the recommended surgery for the Plaintiff by Dr. Heldo Gomez and the reasonableness or necessity of the costs thereof." (*Id.* at ¶ 42.) As with the other witnesses, no Rule 26(a)(2)(B) materials were provided for this witness. (*Id.* at ¶¶ 43-44.) The same is true for Tania Gutierrez, who would testify regarding the same issues with respect to Dr. Shani Katz. (*Id.* at ¶¶ 45-47.) Plaintiff's Rule 26(a)(2)(C) disclosure contradictorily notes that all of these witnesses will testify to, among other things, "their care and treatment as well as causation, permanency and prognosis of the Plaintiff, limitations and restrictions. They will testify regarding the reasonableness and the necessity of the Plaintiff's medical care up until the time of trial and the need for future medical care." (*Id.* at ¶ 48.)

## 2. Legal Standard

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Analysis

#### A. Federal Rule 26

Federal Rule of Civil Procedure 26 deals with disclosure duties of parties relating to general discovery. Under Federal Rule 26(a)(2)(B), a witness must provide a "written report . . . if the witness is one retained or specially employed to provide expert testimony in the case" which must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witnesses's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). For those witnesses who do not need to provide a written report, Rule 26(a)(2)(C) governs. The disclosure for such witnesses must state "(i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Under Rule 26, a "treating physician may testify as either a lay witness or an expert witness; however, in order to testify an expert witness, the

physician must provide the required disclosures under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." *Sweat v. United States*, No. 8:14-cv888, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015). The requirements of Rule 26 are "not merely aspirational," rather, they are "designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Western Union Holdings, Inc. v. Eastern Union, Inc.*, 316 F. App'x 850, 854 (11th Cir. 2008).

In addition to the above, the Court has made clear in its scheduling orders (and as has been highlighted by the Defendant in various motions) that when a "treating physician or provider ventures beyond [observation, diagnosis, and treatment] and includes opinions on causation, prognosis, and/or future implications of the injury, then he or she must provide a *full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)*." *Muzaffar v. Ross Dress for Less, Inc.*, No. 12-61996-Civ, 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013) (Scola, J.); *see also* (Scheduling Order, ECF No. 15; First Amended Scheduling Order, ECF No. 54) (emphasis added).) "When a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence . . . , unless the failure was substantially justified or is harmless." *Cruz v. United States*, No. 12-21518-Civ, 2013 WL 246763, at * 2 (S.D. Fla. Jan. 22, 2013) (Moreno, J.) (quoting Fed. R. Civ. P. 37(c)(1)). Accordingly, to prove causation, prognosis, and/or future implications of the injury, the Plaintiff must satisfy Rule 26(a)(2)(B)'s requirements.

## B. FTCA

In order to prevail on a cause of action for negligence under the FTCA, the Court applies the law of the state where the alleged tort occurred. *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004). To prevail on a negligence claim under Florida law, a plaintiff must adequately allege: 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; 3) that the breach caused the plaintiff's injury; and 4) actual harm. *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007); *see also Canteen v. United States*, No. 1:13-cv-132, 2014 WL 12573516, at *2 (N.D. Fla. Oct. 8, 2014). In Florida, courts follow the "more likely than not standard of causation and require proof that the negligence probably caused the Plaintiff's injury." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). It is a plaintiff's burden to prove causation, and therefore a plaintiff must come forward with evidence affording a reasonable basis for the conclusion that "it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility is not enough." *Rementer v.*

*United States*, No. 8:14-cv-642, 2015 WL 5934522, at *2 (M.D. Fla. Oct. 9, 2015).

Florida courts have held that medical conditions which are not readily observable, such "as back pain and other soft tissue injuries are not readily observable medical conditions" and therefore are not susceptible to evaluation by laypersons, but rather, require evaluation by medical experts with appropriate training, skill, and experience. *Id.* The Eleventh Circuit has stated the same, noting

> [t]he testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court. Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience. When such a situation presents itself, the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony.

*Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316-17 (11th Cir. 2011). "[D]istinguishing between lay and expert testimony is . . . important" and ensures that a party does not take the expedient route of "proffering an expert in lay witness clothing" while avoiding the Federal Rules of Evidence. *Id.* at 1317; *see also* Fed. R. Evid. 702.

"Lay testimony is legally insufficient to support a to support a finding of causation where the medical condition is not readily observable. . . . [P]ain in [a plaintiff's] low[er] back and left leg is not the result of a 'readily observable' medical condition" and therefore must be established by expert testimony. *Crest Products v. Louise*, 593 So. 2d 1075, 1077 (1st DCA 1992); *see also Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-Civ, 2013 WL 8695361, at *6 (S.D. Fla. April 4, 2013) (Torres, Mag. J.). Expert testimony, however, is not necessarily required where the connection between the accident and injury would be obvious to a layman, such as a broken leg from being struck by an automobile. *Jones*, 2013 WL 8695361, at *6. The critical question, therefore, is whether the Plaintiff has met his burden to show that he, as a matter of law, can rely on testimony from Dr. Katz and Dr. Gomez to prove causation and

actual harm at trial based on the type of injuries the Plaintiff claims to have suffered.

### C.  Plaintiff's Expert Witnesses

The parties agree that the Plaintiff has not submitted expert reports in full compliance with Rule 26(a)(2)(B). The two Rule 26(a)(2)(B) witnesses who the Plaintiff purports to rely upon are Dr. Katz and Dr. Gomez. The reports of these witnesses are attached to the Defendant's statement of facts. (Report of Dr. Katz, ECF No. 59-1; Report of Dr. Gomez, ECF No. 59-2.) The Plaintiff states in his disclosures that he will rely on both Dr. Katz and Dr. Gomez, among other things, to testify as to his "worsening, accelerated degeneration and permanence of the injuries, the related future treatment, tests, medications, surgery, etc. and the costs associated with such" as well as "permanency of the injuries, prognosis, future medical treatment, causation, and future medical costs." (Rule 26(a)(2)(B) Witness List, ECF No. 57, at 2-3.) The Plaintiff states that he provided a copy of Dr. Katz's and Dr. Gomez's respective CVs, but not a testimony list as the respective doctors do "not have or maintain a testimony list." (*Id.*) The Plaintiff puts a disclosure at the bottom of his disclosure, stating the listing of Dr. Katz and Dr. Gomez "as 'experts' is merely to indicate such physician has formed expert opinions as to the cause of injury and the permanency of said injury. Plaintiff's treating physicians are not 'retained' and do not acquire their expert knowledge for the purpose of litigation, but rather simply in the course of treating their patient." (*Id.*) Moreover, the Plaintiff's Rule 26(a)(2)(B) disclosure states that Dr. Katz and Dr. Gomez's opinions are based on the Plaintiff's medical records. (ECF No. 57, at 2-4.)

The Court has reviewed the Plaintiff's disclosures and notes that despite the Court's orders (and warnings from the Defendant) that a treating physician who wishes to testify as to causation or actual harm with respect to non-observable injuries like those suffered by the Plaintiff "must provide a full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)" (*see, e.g.*, Scheduling Order, ECF No. 15; First Amended Scheduling Order, ECF No. 54) the Plaintiff has failed to fulfill Rule 26's requirements. The injuries complained of by the Plaintiff and the reports submitted by the Plaintiff identify injuries that would seem to require the Plaintiff to submit a Rule 26(a)(2)(B) report and the Plaintiff does not appear to contest this characterization of his injuries in opposing the Defendant's motion for summary judgment. As the Plaintiff's injuries were not akin to a broken leg

observable by a layman, an expert report in compliance with Rule 26(a)(2)(B) was required to prove causation.

There are numerous deficiencies with the Plaintiff's expert reports. First, the reports do not contain a complete statement of all opinions the witnesses will express and the bases for those opinions. For instance, both the reports of Dr. Katz and Dr. Gomez summarily state that "to a reasonably degree of medical certainty, there is [a] causal relationship between the examinee's current complaints and the reported injuries." (ECF No. 59-1, ECF No. 59-2.) While this certainly is a statement of an opinion that the doctors could express should they be called to testify, it fails to identify the "basis and reasons for them" other than to point to the Plaintiff's medical records. However, this is not allowed under the Federal Rules. "Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a summary." *Jones*, 2013 WL 8695361, at *4. The report similarly points to the Plaintiff's medical records in an attempt to identify the facts and data considered by Dr. Katz and Dr. Gomez in forming their opinions. (ECF No. 62, at 1-2.) A party cannot satisfy Federal Rule 26(a)(2)(B)'s requirements to identify the basis for an expert's opinions by saying the party produced all the necessary information for their adversary to determine the basis for an expert's opinions. The Federal Rules require more work to be done. Contrary to the Plaintiff's belief, this is not harmless because it is highly prejudicial to the Defendant's ability to form its defense, requiring the Defendant to guess at what theories the Plaintiff's experts may pursue and which materials such experts may rely upon in forming those opinions.

The reports also fail to provide a testimony list for the Plaintiff's experts. The Plaintiff states that Dr. Katz and Dr. Gomez do not maintain such lists in the normal course and therefore no such list needs to be disclosed to the Defendant. In support, the Plaintiff states "the Defendant has cited no case law authority to require the preparation of a document which is not maintained in the normal course of their practice" (ECF No. 62, at 1-2) but that is incorrect— the Defendant cites to Rule 26, which, while not "case law authority," facially requires this disclosure. There is no carveout for an expert who fails to maintain such a list. If that was the case, lawyers would instruct their experts to stop preparing such lists in order to prevent having to make such disclosures to their adversaries. While a testimony list may seem administrative in nature, it is an important document which allows parties to evaluate an expert's credibility. For instance, a party may use an expert's testimony list to see how an expert's testimony was received in prior litigations

such as whether or not such expert's testimony was struck or excluded for some reason and why that was the case.

These deficiencies with the Plaintiff's expert reports were identified in the Defendant's first summary judgment motion and the Defendant's evidentiary motion. The Plaintiff was on notice of these potential deficiencies and of the fact the Court saw merit in the Defendant's arguments, but chose to take no further action, submitting the identical reports to those it untimely submitted in January. The Court's orders and Florida law are clear—where a treating physician intends to testify as to causation on an injury that is not readily observable, the plaintiff must submit a full Rule 26(a)(2)(B) report.

The Plaintiff attempts to defeat summary judgment by arguing that his failure to comply with Rule 26(a) was harmless. (ECF No. 62, at 10.) As alluded to above, the Court disagrees. When a party fails to abide by Rule 26(a), the party may not use that information unless the failure was substantially justified or harmless. *Cruz*, 2013 WL 246763, at *2. Failure to disclose is substantially justified if reasonable parties could differ as to whether compliance was required and harmless when there is no prejudice to the opposing party. *Id.* It is the Plaintiff's burden to show substantial justification or harmlessness. *Id.* As stated above, Florida law and the Court's orders are clear—Rule 26(a)(2)(B) reports are required when a treating physician intends to testify as to causation with respect to the type of non-observable injuries at issue here. The Plaintiff has known this since the Court entered its first scheduling order, upon the Defendant's first motion for summary judgment which identified the same deficiencies in the Plaintiff's expert materials, upon the Defendant's evidentiary motion, and upon the Court entering its amended scheduling order. The Court gave the Plaintiff an additional three months to timely disclose its expert reports so that in the intervening period the Plaintiff could undertake remedial action with respect to the deficiencies in its reports identified by the Defendant. The Plaintiff chose not amend his reports, choosing to stand on what had been untimely disclosed in January. This is not harmless as the deficient reports are prejudicial to the Defendant's ability to form its defense in this matter. While the Plaintiff does not advance arguments as to substantial justification, as is the Plaintiff's burden, the Court notes that the Plaintiff's failure was not substantially justified. Numerous Court orders and filings by the Defendant put the Plaintiff on notice of the deficiencies in his expert reports.

The Court further notes that the Plaintiff's additional Rule 26(a)(2)(C) experts cannot cure the Plaintiff's inability to prove causation at trial. This is because, for the same reasons Dr. Katz and Dr. Gomez cannot testify as to causation (failure to comply with Rule 26(a)(2)(B)), the Plaintiff's rule 26(a)(2)(C)

witnesses cannot testify as to causation because, as the Plaintiff acknowledges, they have not provided full Rule 26(a)(2)(B) reports. *Muzaffar*, 2013 WL 3850848, at *1.

Given the procedural history of this matter, and in light of the Plaintiff's deficient reports, the Court agrees with the Defendant that summary judgment is warranted. The Court is constrained by Rule 37 to exclude the Plaintiff's experts from testifying as to causation at trial, and accordingly the Plaintiff will be unable to prove liability as to the Defendant. *See generally*, *Jones*, 2013 WL 8695361, at *4-7 (discussing exclusion of potentially dispositive expert testimony). The Plaintiff's failure to comply with Federal Rule 26(a)(2)(B) was not harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). While the Plaintiff's treating physicians can testify as fact witnesses relating directly to their treatment of the Plaintiff, if the Plaintiff wanted Dr. Katz, Dr. Gomez, or any other witnesses to testify as to topics like causation for the injuries suffered by the Plaintiff at trial, full compliance with Rule 26(a)(2)(B) was required. *See Cruz*, 2013 WL 246763, at *5 ("the Court excludes the physicians' statements as expert opinions. This does not, however, preclude . . . [use of] the physicians as lay witnesses.").

### 4. Conclusion

Consistent with the above, the Court **grants** the Defendant's motion for summary judgment (**ECF No. 60**) as the Plaintiff failed to comply with Federal Rule 26(a)(2)(B) and will be unable to prove causation at trial. The Court warned the Plaintiff of the potentially dispositive nature of the Defendant's arguments and granted the Plaintiff an extension of multiple months to consider the arguments raised by the Defendant and take further action. Rather than address the deficiencies detailed by the Defendant, the Plaintiff filed expert reports on April 22, 2021 that were identical to the reports he first untimely filed in January. This was neither substantially justified nor harmless. As the Plaintiff will be unable to produce evidence at trial that the Plaintiff's injuries, which are the type of injuries that require expert testimony under Florida law, were caused by the Defendant, the Court grants the Defendant's motion.

The Clerk is directed to **close** this case. Any pending motions, if any, are **denied as moot**.

**Done and ordered** in Miami, Florida on July 8, 2021.

Robert N. Scola, Jr.
United States District Judge