United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Cajule Cedant, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-24877-Civ-Scola |
| | ) |
| United States of America, | ) |
| Defendant. | ) |

**Omnibus Order on *Daubert* Motion and Motion for Summary Judgment**

    The Defendant has moved to preclude two of the Plaintiff's expert witnesses from testifying regarding causation at trial (ECF No. 83) and for summary judgment (ECF Nos. 81, 82). The Plaintiff has responded to each motion (ECF Nos. 88, 87, 86), and the Defendant has filed replies (91, 90, 89). The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons discussed below, the Court **denies** the Defendant's *Daubert* motion (**ECF No. 83**) and **denies** the motion for summary judgment. (**ECF No. 81**.)

1. **Background**

    This case arose from a December 10, 2017 car accident involving a United States Postal Service vehicle and a Toyota 4-Runner. The USPS vehicle collided with the Toyota on its passenger side, where the Plaintiff, Cajule Cedant, was sitting at the time. The Toyota rolled over and landed on its roof. The Plaintiff and the driver of the Toyota exited the vehicle without help, were checked by paramedics, and went home without further medical attention.

    Three days later, the Plaintiff went to a chiropractor, who he saw at least 35 times from December 2017 to April 2018. He also received treatment, including surgery, from two surgeons at Spine and Orthopedic Specialists of South Florida starting in March 2018: neurosurgeon Heldo Gomez, M.D., and orthopedic surgeon Shani Katz, D.O. These two surgeons' opinions regarding Cedant's injuries are the crux of the disputes now before the Court.

2. **Analysis**

    The Defendant has filed a motion to exclude Cedant's proposed expert testimony regarding causation (ECF No. 83) and a motion for summary judgment. (ECF No. 81.) The Court will address each in turn.

### A. The Defendant's *Daubert* Motion

The Defendant moves to exclude Cedant's proposed expert opinion testimony as to causation pursuant to the requirements set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (ECF No. 83.) Specifically, the Defendant seeks to preclude two of Cedant's treating physicians from testifying as to the cause of Cedant's injuries on the grounds that neither witness had "an adequate factual basis or a reliable methodology to support their purported causation opinions." (*Id.* at 7.)

Federal Rule of Evidence 702 provides a three-part inquiry for trial courts to consider prior to admitting expert testimony, that is whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert*, 509 U.S. 579]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10. "[T]he Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

The Defendant's objections here relate to the second prong of the analysis: whether the experts used a reliable methodology to arrive at their conclusions regarding the cause of Cedant's injuries.[1] The Defendant argues that both surgeons were told and relied on "inaccurate information regarding Plaintiff's medical, social, and employment history" and "did not consider or rule out other potential causes for Plaintiff's symptoms." (ECF No. 83 at 7.) Furthermore, according to the Defendant, the expert witnesses "will merely parrot the story that Plaintiff told them during the course of treatment and, at bottom, their causation opinions are premised solely on what Plaintiff told

---

[1] As a preliminary matter, Cedant did not previously contest that expert testimony is required to establish causation here because of the non-obvious nature of Cedant's injuries. *See Cedant v. United States*, 75 F.4th 1314, 1318 n.1 (11th Cir. 2023). Cedant's argument on this point in the briefing now before the Court is unclear, and Cedant does not seriously dispute that expert testimony is required to carry his burden of proof with respect to causation. (Pl.'s Resp., ECF No. 86 at 6 (citing *Scott v. United States*, 127 F. Supp. 422, 424 (N.D. Fla. 1955)).

them or the logical fallacy of temporal proximity (*post hoc, ergo propter hoc*)." (*Id.*)

Specifically with respect to Dr. Gomez, the neurosurgeon that treated Cedant starting in March 2018, the Defendant argues that "Dr. Gomez freely admits he did not even attempt to learn the circumstances of Plaintiff's injuries or consider other possible causes but simply accepted what Plaintiff said, noting that the cause bears no significance to the treatment." (*Id.* at 8 (citing Gomez Dep., ECF No. 80-2 at 28:17-22).) The Defendant also cites Dr. Gomez's admission that he found "degeneration and chronic conditions . . . [and] nothing acute or traumatic" but nonetheless connected the conditions to the December 2017 car accident "based on unverified information from the Plaintiff" and "his belief that it is not impossible—putting two and two together temporally—and that there were no findings of another medical condition suggestive of causation." (*Id.* (citing Gomez Dep. at 21:24-22:12, 23:7-13, 37:1-23, 39:2-40:5).) Finally, the Defendant emphasizes that Dr. Gomez did not include other potential causes from Cedant's medical history, such as past car accidents, his job as a mechanic, or physical activity, in his analysis in reaching his causation opinion. (*Id.* at 9.)

Cedant responds that "Dr. Gomez has expressed the basis of his opinion in his report and deposition testimony" (ECF No. 88 at 6) and "Dr. Gomez did inquire and discussed prior or pre-existing conditions with Mr. Cedant." (ECF No. 87 ¶ 14.) Dr. Gomez reviewed Cedant's January 27 and March 22, 2018 MRIs, and "Mr. Cedant described the onset of symptoms following the incident, implicating a temporal relationship." (ECF No. 88 at 7.) Cedant also "specifically denied prior *similar* complaints" to Dr. Gomez. (*Id.* (emphasis in original).) Finally, Cedant argues that Dr. Gomez used a "differential diagnosis analysis"—meaning that "there were no other findings on imaging studies to suggest any other cause" for Cedant's injuries—in arriving at the conclusion that the accident caused the injuries. (*Id.* (citing Gomez Dep. at 37:1-23).)

With respect to Dr. Katz, the Defendant contends that her opinion on causation "fares no better than Dr. Gomez's" because Dr. Katz also relied almost entirely on the version of events recounted by Cedant and lacked fulsome information on Cedant's medical and personal history. (ECF No. 83 at 11-12.) The Defendant specifically cites Dr. Katz's deposition testimony, in which she stated that "if Plaintiff had reported to her that he had fallen off a ladder as opposed to having been in a car collision, her opinion would be that his symptoms were caused by falling off a ladder." (*Id.* at 12 (citing Katz Dep. at 37:23-38:4).)

Dr. Katz explained how she arrived at her opinion that the car accident caused Cedant's injuries in her deposition testimony: "Well, he was in a car

accident and had pain following, so the car accident caused the pain in his shoulder and knee." (ECF No. 80-3 at 37:13-15.) When asked if she considered other potential causes of Cedant's pain, Dr. Katz responded that "That's not reflected in my note, so, no." (*Id.* at 39:23-25.)

But still, the Plaintiff maintains that Dr. Katz's causation opinion is sufficiently reliable because "the basis of her opinion was reviewing the history, physical examination, MRI findings, and using her experience to come to that conclusion." (Pl.'s Resp., ECF No. 88 at 10 (citing Katz Dep., ECF No. 80-3 at 37:16-22).)

Although many of the Defendant's arguments are persuasive, particularly in light of the Eleventh Circuit's holding in *Cooper v. Marten Transport, Ltd.*, the Court declines to exclude the two experts' causation testimony at this stage. *See* 539 F. App'x 963 (11th Cir. 2013). Even if Dr. Gomez and Dr. Katz's causation opinions rely on insufficient methodology, this case will be tried as a bench trial without a jury. The Court is equipped to appropriately weigh or discount the experts' testimony, and the Court therefore need not rule in advance to exclude their causation testimony. *See Ass Armor, LLC v. Under Armour, Inc.*, No. 15-CV-20853-CIV, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) (Clarke, J.) (citing *Bristol-Myers Squibb Co. v. Andrx Pharm., Inc.*, 343 F. Supp. 2d 1124, 1131 (S.D. Fla. 2004) (advance rulings on admission of evidence unnecessary in bench trial "where the Court must evaluate the evidence regardless of whether it ultimately decides to exclude it"); *Multi-Medical Convalescent & Nursing Center*, 550 F.2d 974, 977 (4th Cir. 1977) ("In a non-jury trial . . . little harm can result from the reception of evidence that could perhaps be excluded . . . because the judge . . . is presumably competent to disregard what he thinks he should not have heard, or to discount it for practical and sensible reasons.")). The Court will not hesitate to exclude the experts' testimony if it "turns out not to meet the standard of reliability established by Rule 702." *Estate of Stuller v. United States*, 811 F.3d 890, 895 n.3 (7th Cir. 2016); *see Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1302 (Fed. Cir. 2002) (in bench trials, "the *Daubert* standards of relevance and reliability must still be met").

The Court therefore denies the Defendant's *Daubert* motion to exclude the Plaintiff's treating physicians' testimony as to causation. (ECF No. 83.)

### B. The Defendant's Summary Judgment Motion

The Defendant further argues that summary judgment is appropriate because Cedant has no evidence of causation without the two treating physicians' testimony. (ECF No. 81.) Cedant responds by emphasizing that under Florida law, causation exists even where an accident merely aggravated

rather than originated an injury. (ECF No. 88 at 9.) And even without the causation testimony of Cedant's experts, the testimony of the *Defendant's* expert shows that a genuine dispute as to a material fact exists regarding whether the accident aggravated Cedant's injuries. (*Id.*)

The Court applies the familiar legal standard for summary-judgment motions. "Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (cleaned up). "[T]o survive summary judgment, the nonmoving party must . . . make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.*

The Court must deny the motion for summary judgment, first because the causation testimony of Dr. Gomez and Dr. Katz is not excluded at this stage. But even if the Court had excluded the causation testimony of those witnesses, the Defendant's expert, Dr. Nordt, concedes in his report that Cedant's shoulder injury may have been aggravated by the accident. (Ex. A to Pl.'s Stmt. of Mat. Facts, ECF No. 87-1 at 17.) Under Florida law, this would be sufficient for a finding of causation for the non-moving party (the Plaintiff). *See Tharpe v. United States*, No. 15-CV-21340-UU, 2016 WL 4217863, at *6 (S.D. Fla. Apr. 27, 2016) (Ungaro, J.) ("Florida law permits the fact finder to apportion past medical expenses attributed solely to an aggravation of a preexisting injury." *Moore v. Perry*, 944 So. 2d 1115, 1117-18 (Fla. 4th Dist. Ct. App. 2006)). A genuine dispute as to causation therefore remains, and the Court denies the Defendant's motion for summary judgment.

In sum, the Court **denies** both the Defendant's *Daubert* motion (**ECF No. 81**) and motion for summary judgment (**ECF No. 83**). Finally, the Court **denies as moot** the pending motion for extension of time (**ECF No. 96**), as the Plaintiff already filed the relevant document.

**Done and ordered** in Miami, Florida, on August 14, 2024.

_____
Robert N. Scola, Jr.
United States District Judge