United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Cajule Cedant, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-24877-Civ-Scola |
| United States of America, | ) |
| Defendant. | ) |

**Order Denying Defendant's Rule 52(b) and 59(c) Motion
to Alter or Amend Judgment**

On August 30, 2024, this Court found that the United States's negligence caused both permanent and non-permanent injuries to Cajule Cedant and entered judgment in favor of Cedant for $367,908. (Verdict & Order, ECF No. 113.) The Court entered judgment after a bench trial on August 26, 2024 and August 28, 2024. The Court entered findings of fact and conclusions of law with its judgment. (*Id.*)

On September 27, 2024, the Government filed a motion to alter judgment under Rule 52(b) and 59(e). (**ECF No. 121**). For the reasons that follow, the Court **denies** the Government's motion.

1. **Procedural History**

The Court incorporates herein its findings of fact and conclusions of law. (Verdict & Order, ECF No. 113.) In short, on December 11, 2017, a USPS vehicle ran a stop sign and crashed into a car in which Cedant was a front seat passenger. The United States, through its USPS employee, was negligent, and that negligence was the sole cause of the automobile accident. The Court found that as a result of the accident, Cedant was entitled to $182,908 in past medical expenses; $35,000 in past pain and suffering and loss of enjoyment of life; and $150,000 in future pain and suffering and loss of enjoyment of life. (Verdict & Order, at 10.)

The Government now seeks to reduce the judgment by: (1) $20,987 in medical expenses from medical providers it believes is not supported by any evidence of reasonable relation or medical necessity; (2) $18,665 in claimed medical expenses for knee injuries for which it believes there is no causal relation to the accident; (3) alternatively, $16,500 in platelet rich plasma treatment for the knee because such treatment is a "pseudoscience;" and (4) $185,000 in past and future non-economic damages because the Government believes there is no reliable expert testimony that supports any permanent injury. (Def.'s Mot., ECF No. 121.)

## 2. Legal Standard

Under Fed. R. Civ. P. 52(b), after a properly filed motion, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Under Fed. R. Civ. P. 59(e), "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."

Rule 52(b) "allow[s] the court to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence, but not to allow the relitigation of old issues, a rehearing on the merits, or the presentation of new theories of the case." *NorthStar Moving Holding Co., Inc. v. King David Van Lines*, 19-cv-62176-DIMITROULEAS/SNOW, 2022 WL 17583385, at *1 (S.D. Fla. March 23, 2022) (Dimitrouleas, J.) (citation omitted). Thus, "[a] party seeking to amend findings under Rule 52(b) must show that the trial court's findings of fact or conclusions of law are not supported by evidence in the record." *Id.* (citation omitted). The Rule 52(b) standard is a high bar and such motions "are to be granted sparingly." *Id.* (citation omitted).

Similarly, a motion to alter or amend judgment under Rule 59(e) needs to demonstrate "manifest errors of law or fact that must be corrected," and "may not 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *Id.* (citing, *inter alia*, *Bedtow Grp. II, LLC v. Ungerleider*, 684 F. App'x 839, 843 (11th Cir. 2017) and *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012)).

## 3. Analysis

### A. Certain Medical Expenses

The Government first argues that the Court should reduce its judgment by $20,987 for medical expenses that the Government believes were not medical necessary or reasonable. (Def.'s Mot, at 2.) The Government believes that "there was **nothing more** than these bills themselves to prove that the expenses were reasonable or necessary to treat the effects of the accident," "[n]one of the treating physicians who rendered those services testified at trial," and Cedant "did not testify about whether the medical treatment he received" regarding these specific treatments "was reasonable and necessary." (*Id.* at 2-3 (emphasis in original).)

The Court disagrees. "When a plaintiff testifies as to the amount of his or her medical bills and introduces them into evidence, it becomes a question for the jury to decide, under proper instructions, whether these bills represented reasonable and necessary medical expenses." *East West Karate*

*Ass'n, Inc. v. Riquelme*, 638 So.3d 604, 605 (Fla. DCA 1994). Here, the Government does not dispute that (1) Cedant's medical bills were entered into evidence and (2) Cedant testified as to the amount of his medical bills. Instead, the Government argues that neither Cedant nor any other witness testified specifically to the $20,987 now in dispute. (Def.'s Mot., at 2-3.)

But the Government does not cite to any case law that such specificity is required. After the medical bills were introduced into evidence and Cedant testified to their amount, the Court—as the trier of fact—analyzed the bills, Cedant's testimony, and all other testimony and evidence and determined such bills were reasonable and necessary to Cedant's medical care. (Verdict & Order, at 10.)

Therefore, the Court will not reduce its judgment in favor of Cedant by $20,987.

### B. Expenses Related to Knee Treatments

The Government next seeks to reduce the judgment by $18,665 related to non-permanent knee injuries Cedant suffered as a result of the accident. The Government argues that because such knee injuries were not permanent "and would resolve within a reasonable amount of time, it necessarily follows that treatment to the knee *years* after the accident . . . cannot be meant to treat any injuries that were caused by the accident." (Def.'s Mot., at 4 (emphasis in original).)

The Court disagrees. It is not necessarily true, as the Government suggests, that "[a]ny non-permanent injuries that were related to the accident would have already resolved" two years after the accident. (Def.'s Reply, ECF No. 125, at 2.) In its judgment, the Court explained that, "[e]ven though the Court found that Cedant failed to establish that his . . . knee injuries were permanent injuries, the Court does find that those injuries were caused by the accident and that the medical bills related to treatment of those injuries were reasonable, necessary and related to the accident." (Verdict & order, at 10.) Besides its assertion that any non-permanent injuries would have resolved themselves two years after the accident, the Government does not cite to other evidence in the record suggesting that the Court's judgment was incorrect. Therefore, it is has shown that the Court's findings of fact were in "plain error" and "not supported by evidence in the record." *NorthStar Moving Holding Co.*, 2022 WL 17583385, at *1.

Alternatively, the Government seeks to reduce the judgment by $16,5000 in expenses for platelet-rich plasma ("PRP") injections to Cedant's knee because they do not constitute "***medical*** expenses at all, but are a pseudoscientific procedure, the medical benefits of which are wholly

unsupported by the record." (*Id.* at 5 (emphasis in original).) The Government also cites to testimony from Cedant's expert Dr. Katz to support the notion that PRP treatment is not a traditional medical treatment. (*Id.* at 5-6.)

The Court disagrees. As Cedant points out, "[t]here is no Florida law that requires medical treatment or procedures to be FDA approved in order to be entitled to related medical expenses." (Pl.'s Resp., at 3.) Moreover, as Cedant pointed out in his response and at trial, the article cited by the Defendant for the proposition that PRP is ineffective "involved the use in osteoarthritis patients, which is irrelevant to the current case." (*Id.*) Dr. Katz, who treated Cedant's knee injury, testified that PRP injections are effective in her clinical practice. (*Id.*) Based on the record, the Court found the PRP treatments reasonable, necessary, and related to the accident. The Government has not shown how this conclusion was in plain error and not supported by evidence in the record.

Therefore, the Court will not reduce the damages awarded to Cedant for his knee injuries related to the accident.

### C. Past and Future Non-Economic Damages

The Government next seeks to reduce the judgment by $185,000 in past and future non-economic damages because of insufficient expert testimony. As relevant here, under Florida law, a plaintiff may only recover for non-economic damages if he or she has suffered a permanent injury. Fla. Stat. § 627.737(2). Moreover, where an injury is non-obvious, expert testimony is required to prove that an accident caused the permanent injury. *Mattek v. White*, 695 So. 2d 942, 943 (Fla. 4th DCA 1997). The Government believes that Cedant's experts, Drs. Katz and Gomez, used unreliable methodologies when forming their causation opinions. (Def.'s Mot., at 6-14.)

In doing so, the Government repeats the arguments it made in its pre-trial and trial *Daubert* motions. The Court explained in its judgment why the Plaintiffs' experts were reliable, and why the case law the Government cites in opposition is inapposite to the facts of this case. (*See* Verdict & Order, at 6-8.) Therefore, the Court again finds the Plaintiffs' experts reliable, and will not reduce the judgment by $185,000.

### 4. Conclusion

Accordingly, for the reasons set forth above, the Court **denies** the Defendant's Rule 52(b) and 59(c) Motion to Alter or Amend Judgment (**ECF No. 121**).

**Done and ordered** in Miami, Florida on October 29, 2024.

_____
Robert N. Scola, Jr.
United States District Judge